**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
CALIFORNIA, SACRAMENTO DIVISION**

FILED

MAR 7 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY CLERK

SCOTT HOLLAND,

    PLAINTIFF,

    CIVIL ACTION NO.

    NO. 2:11-CV-00580-KJM-CMK

vs.

BP AMERICA, INC.,

    DEFENDANT.

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT – March 4, 2011**

1. **Jurisdiction:** Defendant has done a commendable job of
establishing Federal jurisdiction. Thanks, now I can get paid what I
really deserve without the small claims limitation and seek punitive
damages. Defendant certainly deserves it at this point.

    1.1. Plaintiff accepts the appointment of Magistrate Kellison.

2. **Demand for a Jury Trial:** Plaintiff hereby demands a jury trial in
this action.

3. **Request for Rule 26 Conference:** Plaintiff hereby notifies
Defendant and the Court of the desire to work out a discovery
plan.

4. **Facts:** Overview – It is not reasonably in dispute the Defendant's
negligence caused a catastrophic emergency for all citizens of the
United States, that they openly solicited consulting services to

- 1 -

provide possible solutions, that Plaintiff provided a sincere and reasonable effort to provide such a solution, that Plaintiff is an inventor and has a high degree of novel intelligence and a college degree with a 3.82 cumulative GPA, that Plaintiff founded Range Revolution, Inc. and had compensation of $165,000/year, Plaintiff co-founded [and developed the novel concept in most part] www.vhctoday.org,  and that Plaintiff provided possible solutions without typical intellectual property protection at great risk to Plaintiff's own financial compensation solely because the emergency was so time sensitive not to do so may have nullified Plaintiff's possible, early solution.[1]

4.1. BP was negligent in the Deepwater Horizon oil spill, as Defendant admits.

4.2. BP solicited "emergency help" in the form of potential solutions from United States' citizens.

4.3. Plaintiff made a good faith effort to provide such emergency help as evidenced by the documents attached the original complaint.

4.4. Defendant's emergency situation compelled Plaintiff, due to the time sensitive crisis, to forego any intellectual property protection. This means had Plaintiff come up with a novel invention or method, that intellectual property would no doubt be claimed by Defendant as their own. This additional risk taken by Plaintiff in a effort to help this nation; AND Defendant, was created by Defendant's negligent emergency.

---

[1] **See FN 2**

1    4.5.  Defendant, in soliciting and accepting Plaintiff's works (i.e,
2   they did not blindly reject them, which may have indicated "no
3   contract," but they did not, and even if they did, you cannot solicit
4   other's time for your negligent emergency in a rush and expect
5   everything for free – un-American and all that British rot – oh wait,
6   they lost that war) **_completed an implied contract with Plaintiff_**.

7    4.6.  Plaintiff's suggested solutions represent viable, highly
8   valuable intellectual property.

9    4.7.  Plaintiff, in an effort to save scarce judicial resources,
10  filed for "less" than Defendant reasonably owed Plaintiff (after
11  Defendant ignored two invoices demanded payment) in small claims
12  court: As if Defendant has not harmed this nation enough.

13   4.8.  So now, Defendant would rather pay far more than the invoice
14  to Defendant to a lawyer in an effort to ensure a U.S. citizen gets
15  nothing for trying to help them. Very nice indeed. _Maybe Defendant_
16  _would like to spray me with oil for trying to help while they are at_
17  _it?_

18   4.9.  And I realize an invoice for almost $10,000 will likely
19  interfere with Tony Hayes' (defendant's once upon a disaster
20  president) yacht racing hobby – so I can see their hysteria in trying
21  to avoid paying – well, other than the legal fees they will incur.

22   4.10. Had Plaintiff, through his own negligence needed to make an
23  **open solicitation** for **emergency help** [like run out of gas for
24  example], Plaintiff, as many have, could be charged for those
25  responding to the request without prior negotiations.

4.11. Had Plaintiff run out of gas through negligence, putting out an open request for help, and Defendant responded, what are the chances Defendant would not charge Plaintiff not only for the gas, but a premium for the emergency situation? Zero.

4.12. Plaintiff actually UNDERBILLED for his time and did not to date factor a "risk premium" for the lack of intellectual property protection as set forth, *supra*.

4.13. Plaintiff is modifying his invoice to reflect the full value due, as is his right, since Defendant does not appreciate or want to pay the invoices sent.

5. **COUNT ONE – FRAUD**

5.1. All the above statements are hereby reiterated.

5.2. This is easy. Who in their right mind as a corporate executive would think everyone would work for free while they are out yacht racing – to help solve their negligent emergency – one of biblical proportions no less? Then make every effort not to pay for emergency services rendered? Fraud.

5.3. Defendant created a catastrophic emergency in the United States through negligence as to the Deepwater Horizon oil spill.

5.4. Said emergency was as inherently and crucially time sensitive as any emergency could be, as to any possible solutions.

5.5. Defendant openly solicited, via their website, consumers to present possible solutions.

5.6. Plaintiff responded with a sincere effort to Defendant's plea for emergency help.

1    5.7.  Plaintiff reasonably believed Defendant would pay for services
2    solicited, rendered, and billed under these emergency circumstances.

3        5.8.  Defendant's actions of not responding or paying either of the
4    two invoices sent, and instead trying to avoid paying at all by
5    spending more money a lawyer is deliberate [fraud].

6        5.9.  Defendant knew consumers like Plaintiff would respond to this
7    emergency/national disaster, spending valuable time, present
8    potentially valuable solutions; who would then deserve to be
9    compensated.

10    5.10. This solicitation, with the knowledge they would fight rather
11    than pay for services rendered, evidenced clearly by Defendant's
12    refusal to respond to or pay the invoices and hiring of a law firm to
13    avoid payment to Plaintiff, is fraud.

14    5.11. Defendant's deliberate failure to compensate Plaintiff is
15    being done with malice aforethought.

16    5.12. Defendant's deliberate failure to compensate Plaintiff has
17    harmed Plaintiff.

18    5.13. There is a very clear question here for a jury as to fraud.

19    5.14. Did Defendant really believe U.S. Citizens would be gouged for
20    oligopoly gas prices while working for free in response to Defendant's
21    negligent and horrific disaster – while the Defendant's president is
22    out yacht racing and collecting a multi-million dollar salary?
23    Incredible audacity?![2] No?

24

25    [2] I cannot wait to see the new Amerika [sic] after the 2012 elections are
     purchased wholesale by these types of negligent, evil, corporate
     looters/hoarders – thanks to those unbiased folks on the U.S. Supreme Court
     who's friends and family certainly are not mostly rich, elite professionals,

1   6. **COUNT TWO – VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES**

2   **ACT (CLRA)**

3   6.1.  Defendant open solicitation targeted U.S. consumers,

4   while specific efforts by Defendant targeted professionals.

5   6.2.  Plaintiff responded primarily as a consumer, rather

6   than a professional with an established relationship with

7   Defendant.

8   6.3.  **CLRA §1761.**  As used in this title:

9    (e) "Transaction" means an agreement between a consumer
 and any other person, whether or not the agreement is a
10   contract enforceable by action, and includes the making
 of, and the performance pursuant to, that agreement.

11  6.4.  **CLRA §1770.**

12   (a) The following unfair methods of competition and
 unfair or deceptive acts or practices undertaken by **any**
13   **person** in a transaction intended to result or which
 results in the sale or lease of goods or services to any
14   consumer are unlawful: (emphasis added)

15   6.4.1.      (5) Representing that goods or services
 have sponsorship, approval, characteristics,
16   ingredients, uses, benefits, or quantities which they
 do not have or that a person has a sponsorship,
17   approval, status, affiliation, or connection which he
 or she does not have.

18   6.4.1.1. Defendant's open solicitation represented a

19  service, i.e., the service offered was "provide possible

20  solutions in good faith and receive compensation,"[3] with

21

22  politician, judges, and corporate executives. I wonder which will come first,
23  civil war in the USA or world war? Our best & brightest must be so proud… oh
wait, the poor and Muslims have been running America for 200 years… it's
24  their fault! LOL Delusional sociopaths in DC = corporate lackeys.
[3] And no, Defendant did not openly advertise payment for services rendered
25  during their negligent emergency [global catastrophe probably more accurate]
as to solicitation of solutions to the oil spill – **but that is the very**
**nature of "negligent emergencies" – you are and must be allowed to assume**
**reasonable compensation.** You want to help and not seek pay, fine. You want to

1  benefits they do not have – kind of a big one – payment for

2  services rendered; bedrock of American capitalism and a

3  country of law. *No?*

4      6.4.2.      (10) Advertising goods or services with
        intent not to supply reasonably expectable demand,
5      unless the advertisement discloses a limitation of
        quantity.

6
        6.4.2.1. Here, Defendant's open solicitation
7  represented a service, *i.e.*, the service offered was

8  "provide possible solutions in good faith and receive

9  compensation," with a reasonable expectation Defendant, an

10  incredibly wealthy corporation, would be able to provide

11  compensation for their emergency solicitation for help, **_or_**

12  **_certainly advertise limitations on any such compensation_**

13  (aka: their "known"[4] side of the bargain for seeking/getting

14  emergency help).

15      6.4.3.      (14) Representing that a transaction
        confers or involves rights, remedies, or obligations
16      which it does not have or involve, or which are
        prohibited by law.
17

18

19
_____
20  ignore an emergency, fine. But not what Defendant proposes – a one way street
    no matter what. Why? Because negotiations would cause additional risk of
21  harm/death to people and the environment. *E.g.: "Hi, I am trapped on Mt.
    Shasta due to my negligence… oh, a financial affidavit, how much, you want to
    know if I have an attorney… will get back to me tomorrow to finish*
22  *negotiations?"* Get it. Easy. Right? **_Another public interest case, among other_**
    **_things: Do not use a negligent disaster to solicit unprotected intellectual_**
23  **_property from Americans, thinking you will lawyer your way out of reasonable_**
    **_compensation._** We are incredibly dumb judged as a whole, but not all us.
24
    [4] These are very sophisticated businesspersons running Defendant who command
25  exorbitant salaries/bonuses/perks – if they did not place limitations on
    their emergency solicitation for help – how is that my fault? They have
    hundreds of lawyers. They just hoped to sneak by for free in the confusion –
    typical – for environmentally ruinous assholes on the grandest scale.

6.4.3.1. Here, Defendant's emergency solicitation represented "a transaction [that] confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." *I.e.,* the transaction conferred involved, "provide possible solutions in good faith to solve our negligent emergency/natural disaster and receive reasonable compensation," with a reasonable expectation Defendant, an incredibly wealthy corporation, would actually want[5] to provide compensation for their emergency solicitation for help, ***or certainly advertise limitations on any such compensation on the same site as their solicitation for help*** (aka: their "known/conferred"[6] side of the bargain for seeking/getting emergency help).

6.4.4.        (19) Inserting an unconscionable provision in the contract.

6.4.4.1. Here, Defendant's "*unconscionable provision*" was left unstated/omitted, "You help us with our emergency/natural disaster, and we will fight to not reasonably compensate you." That is about as unconscionable

---

[5] Yes, I feel it is reasonable I expected Defendant to actually "want" to be fair as to compensation – they are certainly generous paying themselves – and seem to hold capitalism as quite sacred, even with their obscene profits from a taxpayer subsidized oligopoly raping consumers on a basic utility – fuel.
[6] These are very sophisticated businesspersons running Defendant who command exorbitant salaries/bonuses/perks – if they did not make it known they had no intention of paying for any help in response to their emergency solicitation for help – how is that my fault? They have hundreds of lawyers. They just hoped to sneak by for free in the confusion – typical – for environmentally ruinous assholes on the grandest scale.

**Scott W. Holland**
16535 Stewart Road
Montague, CA 96064
kmaysm@gmail.com

March 4, 2011

BP America, Inc.

Via E-mail to:

      Christopher W. Keegan (232045)
      chris.keegan@kirkland.com
      Micah Charlese Edmonds Osgood (admissions pending)
      micah.osgood@kirkland.com
      Kirkland & Ellis LLP
      555 California Street
      San Franciso, CA 94104
      Telephone: (415) 439-1400
      Fax: (415) 439-1500
      Attorneys for BPAmerica, Inc.

Re: Consumer Legal Remedy Act" (CLRA) Violation Notice & Demand
for Corrections

Dear BP:

Pursuant to the California CLRA §1782(a), you have thirty days to correct the following alleged
violations:

Statement of Facts Not Reasonably in Dispute: Defendant's open solicitation on their website for
help in solving their negligent oil spill targeted U.S. consumers, while specific efforts for
consultants by Defendant targeted professionals.

I did respond with a reasonable effort to provide a solution to BP's disastrous negligence, and am
reasonable in expecting compensation.

My response was primarily as a concerned, highly educated consumer (of goods from the Gulf of
Mexico that were being ruined, a buyer of BP gasoline, and concerned citizen for a U.S. natural
resource, the Gulf of Mexico), rather than a professional with an established relationship with
Defendant.

**CLRA §1770.**

      **(a) The following unfair methods of competition and unfair or deceptive acts
      or practices undertaken by any person in a transaction intended to result or
      which results in the sale or lease of goods or services to any consumer are
      unlawful: (emphasis added)**

      **(5) Representing that goods or services have sponsorship, approval,
      characteristics, ingredients, uses, benefits, or quantities which they do not**

**have or that a person has a sponsorship, approval, status, affiliation, or
connection which he or she does not have.**

BP's open solicitation represented a service, i.e., the service offered was "provide possible
solutions in good faith and receive compensation," with benefits they do not have – kind of a big
one – payment for services rendered; bedrock of American capitalism and a country of law. No?

> **(10) Advertising goods or services with intent not to supply reasonably
> expectable demand, unless the advertisement discloses a limitation of
> quantity.**

Here, BP's open solicitation represented a service, i.e., the service offered was "provide possible
solutions in good faith and receive compensation," with a reasonable expectation Defendant, an
incredibly wealthy corporation, would be able to provide compensation for their emergency
solicitation for help, or certainly advertise limitations on any such compensation (aka: their
"known" side of the bargain for seeking/getting emergency help).

> **(14) Representing that a transaction confers or involves rights, remedies, or
> obligations which it does not have or involve, or which are prohibited by
> law.**

Here, BP's emergency solicitation represented "a transaction [that] confers or involves rights,
remedies, or obligations which it does not have or involve, or which are prohibited by law." I.e.,
the transaction conferred involved, "provide possible solutions in good faith to solve our
negligent emergency/natural disaster and receive reasonable compensation," with a reasonable
expectation Defendant, an incredibly wealthy corporation, would actually want  to provide
compensation for their emergency solicitation for help, or certainly advertise limitations on any
such compensation on the same site as their solicitation for help (aka: their "known/conferred"
side of the bargain for seeking/getting emergency help).

> **(19) Inserting an unconscionable provision in the contract.**

Here, Defendant's "unconscionable provision" was left unstated/omitted, "You help us with our
emergency/natural disaster, and we will fight to not reasonably compensate you." That is about as
unconscionable as I can truly imagine… Defendant's wildly capitalistic posturing on just about
everything else, and the yacht racing stunt during the disaster are just lemon juice on third degree
burns.

**CLRA Remedies Sought:**

1. BP can compensate on their own initiative, persons who in good faith submitted unprotected
intellectual property to Defendant to assist them in their negligent emergency/disaster, including
adequate compensation for the risks associated with having to submit intellectual property
without protection/negotiation.

2. BP can clearly post compensation terms, or lack thereof, on the same site with a checkbox
indicated one has read such terms, prior to accepting unprotected intellectual property from
American citizens.

Sincerely,

*Scott W. Holland*